UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

PATRICIA GALOUCH,            )
                             )
       Plaintiff,            )
                             )
  v.                         )    1:11-cv-00282-JAW
                             )
MAINE DEPARTMENT OF          )
PROFESSIONAL AND FINANCIAL   )
REGULATION, et al.,          )
                             )
       Defendants.            )

**ORDER ON MOTION TO DISMISS**

In this employment discrimination case, the Court grants the State Defendants' motion to dismiss the Title VII count, dismisses without prejudice the state law claims, and upon motion of the Plaintiff, dismisses without prejudice the remaining federal count.

**I.    STATEMENT OF FACTS**

On July 25, 2011, Patricia Galouch filed a complaint against the state of Maine, Department of Professional & Financial Regulation (Department) and Anne Head in her capacity as Commissioner of the Department,[1] claiming that the Department retaliated and discriminated against her when it terminated her. *Compl.* (Docket # 1). The Department moved to dismiss the Complaint on September 20, 2011. *Defs.' Mot. to Dismiss* (Docket # 4) (*Defs.' Mot.*). Ms. Galouch

---

[1] The Court refers to both the Department and Commissioner Head as "the Department" unless the context requires separate treatment.

responded on October 11, 2011. *Pl.'s Opp'n to Defs.' Mot. to Dismiss* (Docket # 5) (*Pl.'s Opp'n*). The Department replied on October 21, 2011. *Defs.' Reply Mem. in Support of Their Mot. to Dismiss* (Docket # 6) (*Defs.' Reply*).

According to the Complaint, the Department, specifically the Maine Bureau of Insurance (Bureau), employed Patricia Ann Galouch, a resident of Augusta, Maine, from May 6, 2006 to October 22, 2010 as an Office Associate II. *Compl.* at ¶¶ 4, 7. Throughout her employment, Ms. Galouch was a member of the Maine State Employees Association (MSEA), a labor union for state employees. *Id.* ¶ 8. Beginning in 2007, Ms. Galouch alleges that she was subjected to discrimination and harassment at work, including ongoing hostility by one or more of her immediate supervisors, and was falsely accused of unprofessional conduct and subjected to unjustified disciplinary action and an involuntary reassignment of her duties. *Id.* ¶ 9. Beginning 2007, the MSEA filed several grievances on Ms. Galouch's behalf relating to harassment and retaliatory conduct by managers at the Bureau. *Id.* ¶ 10. On January 7, 2009, Ms. Galouch filed a charge with the Maine Human Rights Commission, alleging discrimination and retaliation in violation of the Maine Human Rights Act (MHRA), and on January 7, 2009, the MSEA filed a prohibited practices complaint with the Maine Labor Relations Board on behalf of Ms. Galouch, alleging discrimination and harassment based on her MSEA membership. *Id.* ¶¶ 11-12. On March 10, 2009, Ms. Galouch, her attorney, and MSEA representatives engaged in mediation with the State and reached an agreement in which Ms. Galouch agreed to dismiss or withdraw all her past

complaints in exchange for the State's agreement to retain her position, improve her working conditions, remove certain files relating to discipline from her employment file, and pay her attorney fees. *Id.* ¶ 13.

On December 16, 2009, the MSEA filed a grievance on Ms. Galouch's behalf in connection with an oral reprimand she received from one of her supervisors. *Id.* ¶ 14. The Department failed to respond to the grievance in accordance with the applicable collective bargaining agreement or otherwise consistent with the March 2009 Settlement Agreement, specifically automatic elevation to Step 3 of the collective bargaining agreement's grievance procedure. *Id.* ¶ 15.

One of Ms. Galouch's job duties was to tend to administrative details regarding Department public hearings, including coordinating with various State subcontractors. *Id.* ¶ 16. On January 13, 2010, Ms. Galouch reported to her supervisor that she believed a State subcontractor had breached the terms of a court reporting service agreement. *Id.* ¶ 17. Ms. Galouch's direct supervisor—a senior state attorney at the Bureau—suggested that her concerns were unjustified and became angry with Ms. Galouch. *Id.* Ms. Galouch's supervisor passed her concerns along to the Deputy Superintendent of the Bureau and both the Deputy Superintendent and the supervisor were angered by the fact that Ms. Galouch had reported what she perceived to be a violation of law. *Id.*

On January 21, 2010, Ms. Galouch reported to the Department Contract Administrator that another court reporter may have violated the terms of the service agreement by asking one of her colleagues to cover a hearing without

approval from the Bureau. *Id.* ¶ 19. As with the earlier report, this report angered her supervisors. *Id.*

On January 28, 2010, the Superintendent of the Bureau, Mila Kofman, placed Ms. Galouch on involuntary (paid) administrative leave. *Id.* ¶ 20. The notice of suspension referred to "serious allegations of misconduct," claimed that she had "exceeded her authority" and notified her that her conduct "could lead to discipline, up to and including discharge." *Id.* The letter stated that an investigation would be conducted in the "near future." *Id.* As of January 28, 2010, Ms. Galouch was not allowed on Bureau premises. *Id.* Ms. Galouch later learned that it was the reports to her supervisors in January regarding the alleged violations of law that served as the basis for placing her on administrative leave. *Id.* ¶ 21. Ms. Galouch was placed on administrative leave without prior notice, without an opportunity to understand these allegations or respond to them, and without regard to the express terms of the March 10, 2009 Settlement Agreement. *Id.* ¶ 22.

On February 8, 2010, the MSEA filed a grievance alleging a hostile work environment, intimidation and harassment. *Id.* ¶ 23. Once again, the State failed to respond to the grievance in accordance with the collective bargaining agreement or the March 2009 Settlement Agreement. *Id.* Between January 28, 2010 and July 8, 2010, the State did not communicate with Ms. Galouch, did not permit her on the premises, and did not provide any information regarding the status of her administrative leave or the results of any investigation. *Id.* ¶ 24.

In June 2010, Ms. Galouch hired counsel and on July 7, 2010, her attorney wrote the Chief Counsel of the state of Maine Bureau of Employee Relations, Joyce Oreskovich, and the Commissioner to inform them of his representation of Ms. Galouch and to request a copy of her personnel file. *Id.* ¶ 25. On July 12, 2010, Ms. Galouch received a letter dated July 9, 2010 from an investigator within the state of Maine Office of Employee Relations, seeking an interview with her "in connection with the allegations that she exceeded her authority." *Id.* ¶ 26. The letter also stated that the investigation "has now been <u>expanded</u> to include allegations of additional performance issues discovered since your leave, including inattention to detail, entering incorrect information into a database, and failure to follow directions." *Id.* (emphasis in Complaint).

On August 17, 2010, Ms. Galouch and a MSEA Field Representative met with the investigator to discuss the State's concerns and to answer questions. *Id.* ¶ 27. Ms. Galouch provided truthful, complete answers to the investigator's questions. *Id.* ¶ 28. On September 9, 2010, the investigator issued a report to Attorney Oreskovich entitled "Patricia Galouch Investigation." *Id.* ¶ 29.

On September 27, 2010, Ms. Galouch received notice from Superintendent Kofman that the Department intended to terminate her employment. *Id.* ¶ 30. On October 15, 2010, Ms. Galouch and her MSEA Field Representative met with the Commissioner, Superintendent Kofman, and Attorney Oreskovich at a "Loudermill" hearing at which the State must provide oral or written notice of the charges against Ms. Galouch, an explanation of the evidence against her, and an

opportunity for a fair and meaningful hearing. *Id.* ¶ 31. At the Loudermill hearing, Ms. Galouch was asked questions about her alleged misconduct and provided truthful responses. *Id.* ¶ 32.

On October 19, 2010, the Commissioner notified Ms. Galouch in writing that she was terminating her employment effective October 22, 2010 and on October 22, 2010, the Department in fact terminated her employment. *Id.* ¶¶ 33-34. The Department terminated Ms. Galouch's employment without regard or deference to the terms of the 2009 Settlement Agreement or the collective bargaining agreement's "progressive discipline" provisions, which set forth disciplinary measures ranging from (i) oral reprimand, (ii) written warning, (iii) written reprimand, (iv) suspension, (v) demotion, and finally (vii) dismissal. *Id.* ¶ 35.

## II. THE PARTIES' POSITIONS

### A. The Department's Motion to Dismiss

The Department's motion to dismiss is premised on its assertion that the Complaint does not contain sufficient facts to state claims for employment discrimination under Title VII of the Civil Rights Act of 1964, the MHRA, the Maine Whistleblowers Protection Act (MWPA), or 42 U.S.C. § 1983. Turning first to Count One, the Title VII count, the Department notes that Title VII covers unlawful employment practices based on race, color, religion, sex, or national origin. *Defs.' Mot.* at 6 (quoting 42 U.S.C. § 2000e-2). The Department contends that the Complaint "has not alleged any facts suggesting discrimination on the basis of any characteristic protected by Title VII." *Id.* Furthermore, the Department maintains

that Ms. Galouch has not alleged any facts "that set forth the elements of a retaliation claim under Title VII." *Id*. To the extent Ms. Galouch is relying on her filing a grievance to establish a Title VII case, the Department says that these allegations do "not establish protected activity under Title VII." *Id*. at 7. According to the Department, Ms. Galouch's reporting of alleged contract violations by court reporters does not trigger Title VII protection. *Id*. at 8. Finally, the Department says that Ms. Galouch's attorney's letter dated July 7, 2010 to the Department is not protected activity under Title VII. *Id*. at 8-9.

The Department turns to Count Two, the MHRA and MWPA claims. Citing case law, the Department observes that there are three elements to a MWPA claim: (1) that the claimant engaged in protected activity; (2) that the claimant was the subject of adverse employment action; and (3) that there was a causal link between the protected activity and the adverse action. *Id*. at 9. The Department says that the Maine Supreme Judicial Court addressed a nearly identical set of facts in *Bard v. Bath Iron Works Corp.*, 590 A.2d 152 (Me. 1991) and concluded that the employee had failed to plead a case under the MWPA. *Defs.' Mot*. at 10-11. The Department maintains that this Complaint does not contain sufficient facts to support a MWPA allegation. *Id*. at 11-12.

Finally, regarding Count Three, the § 1983 count, the Department observes that to the extent the Complaint seeks monetary damages against the Department or against the Commissioner in her official capacity, the claim is barred by the Eleventh Amendment. *Id*. at 12-13. Furthermore, the Department contends that

7

the Complaint does not contain sufficient facts to sustain an equal protection claim of sex discrimination brought under § 1983. *Id.* at 13-14.

B. **Ms. Galouch's Response**

In her reply, Ms. Galouch withdraws Count Three; however, she argues that the Department's motion to dismiss Counts One and Two is "premature and raises factual issues not appropriately raised in a motion for judgment on the pleadings." *Pl.'s Opp'n* at 2.

Ms. Galouch clarifies that Count One was "brought pursuant to the anti-retaliation provisions of Title VII." *Id.* at 4. She claims that the "protected activity" included the filing of grievances by the MSEA against the Department and her complaints to her supervisors about violations of law or policy. *Id.* Citing two District of Maine cases, she insists that the filing of a grievance has been deemed protected activity under Title VII, the MHRA, and the MWPA. *Id.* at 5. She also says that her complaints to her supervisors about "violations of law or policy" should not be read in isolation and might support a jury finding of mixed motives. *Id.* She rejects the Department's contention that the hiring of an attorney is unprotected activity, asserting instead that letters from an employee's counsel could, on the facts, constitute protected activity. *Id.* at 6. Ms. Galouch repeats this same argument for Count Two, her MHRA and MWPA claims. *Id.* at 6-7.

C. **The Department's Reply**

The Department reasserts its position that complaining to a supervisor about possible violations of a court reporting contract is not a Title VII violation. *Defs.'*

*Opp'n* at 1. Even though Ms. Galouch blankly asserted that she endured a hostile work environment, the Department points out that she failed to describe what precipitated that environment and whether it was related to one of Title VII's protected categories. *Id.* at 1-2. Even assuming some grievances could constitute protected activity, the Department contends that the basis for the grievances appears to have been Ms. Galouch's reports of court reporter violations, which would not be a Title VII issue, and that there is no allegation that the subject of Ms. Galouch's grievances was related to race, color, religion, sex, or national origin. *Id.* at 2. The Department also disputes the assertion that the July 10, 2010 attorney letter constitutes protected activity under Title VII. *Id.* at 2-3.

As regards the state law claims, the Department notes that the MHRA prohibits discrimination on the basis of race, color, sex, sexual orientation, physical or mental disability, religion, ancestry or national origin, age, and previous assertion of a workers' compensation claim. *Id.* at 4 (citing 5 M.R.S. § 4552). The Department concedes that the MHRA also prohibits retaliation and coercion against an individual because he or she has opposed any act or practice that is unlawful under the MHRA or because that person made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the MHRA. *Id.* (citing 5 M.R.S. § 4633). The Department reiterates that Ms. Galouch's state law claims fail "for the same reason her claims under Title VII fail." *Id.*

## III. LEGAL STANDARD

The Defendants move to dismiss the complaint, alleging that Ms. Galouch's federal pleading is inadequate. Rule 8 provides:

> A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . .

FED. R. CIV. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Rule 12(b)(6) provides that a complaint can be dismissed for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In ruling on a motion to dismiss, a court is required to "accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiff." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 41 (1st Cir. 2009) (quoting *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001)). To survive a motion to dismiss, a plaintiff must allege "sufficient facts to show that he has a plausible entitlement to relief." *Id.* (citing *Iqbal*, 556 U.S. 685-87).

In *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50 (1st Cir. 2012), the First Circuit amplified the proper handling of a motion to dismiss. *Id.* at 55 (citing *Ocasio-Hernández v. Fortuña-Burset*, 640 F.3d 1, 7, 11-13 (1st Cir. 2011)).

> Step one: isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements. Step two: take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable

inferences in the pleader's favor, and see if they plausibly narrate a claim for relief.

*Id.* (citing *Ocasio-Hernández*, 640 F.3d at 12). "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a 'context-specific' job that compels [the court] 'to draw on' [the judge's] 'judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

## IV. DISCUSSION

### A. The Title VII Count

Following the First Circuit's analytic path, the Court sifts through Ms. Galouch's allegations, winnowing out legal labels and conclusions. The Court thus has jettisoned blanket accusations of "discrimination" or "harassment" and has examined what is left. What emerges is not a Title VII cause of action.

The heart of Ms. Galouch's Complaint is that she notified her superiors at the Department about potential violations of the court reporter contracts and that her superiors reacted poorly. Instead of responding positively, the higher-ups within the Department turned on her, held her report against her, and accused her of acting without authority. Her efforts to notify the Department of contractual violations by third persons became the basis for the Department's termination of her job.

A second undercurrent in Ms. Galouch's Complaint is the MSEA's involvement, through the collective bargaining agreement, in pursing grievances on behalf of Ms. Galouch. She says that the Department effectively punished her for the MSEA's filing of grievances on her behalf. A third underpinning for the

11

Complaint is that the Department breached the terms of the March 10, 2009 settlement agreement with the MSEA regarding Ms. Galouch. A final factual allegation is that the Department terminated Ms. Galouch after she retained counsel and in so doing, violated Title VII.

The obvious problem with these allegations, taken individually or as a whole, is that they have nothing to do with Title VII. Title VII makes it unlawful for an employer to discriminate against or classify an individual "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1)-(2). It is also unlawful under Title VII for an employer to discriminate against an employee because the employee "has opposed any practice made an unlawful practice" by Title VII or because the employee has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a).

To make out a retaliation claim under Title VII, "the plaintiff must prove that (1) he or she engaged in protected activity under Title VII, (2) he or she suffered an adverse employment action, and (3) the adverse employment action was causally connected to the protected activity." *Collazo v. Bristol-Myers Squibb Mfg., Inc.*, 617 F.3d 39, 46 (1st Cir. 2010). The standard for surviving a motion to dismiss is not especially high. The First Circuit has held that a plaintiff "need not show that the conditions he or she opposed actually amounted to a violation of Title VII." *Id.* at 48 (internal punctuation and citation omitted). Instead, the plaintiff "must

demonstrate only that he or she had a good faith reasonable belief that the underlying challenged actions were unlawful." *Id.*

Ms. Galouch argues that the actions listed in the Complaint—the December 2009 grievance, her complaints to her supervisors, the February 2010 grievance, and her attorney's July 7, 2010 letter to the Department—are protected activity under Title VII. Her argument against the motion to dismiss is based on the content of her grievances. But as she concedes, the Complaint did not attach or incorporate these documents. "Ordinarily, of course, any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). There are "narrow exceptions" for "documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents referred to in the complaint." *Id.* Yet, in the post-Complaint filings, Ms. Galouch has not attempted to place any of the actual documents before the Court. She has merely alluded to them and made a general statement about what they say. Her attorney's description of the content of these documents—"more specific allegations of disparate treatment, intimidation, retaliation, harassment, and hostile work environment"—is no less legal labels and conclusions than the generalized allegations in her Complaint and does not change the analysis. *See Schatz*, 669 F.3d at 55-56.

Further, in a footnote, Ms. Galouch remarks that if the court considers "matters outside the pleadings," the motion should be treated as a motion for

summary judgment. *Pl.'s Opp'n* at 5 n.2 (citing FED. R. CIV. P. 12(d)). *But see Watterson*, 987 F.2d at 3 ("The problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff. Where plaintiff has actual notice and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated"). To fit within Rule 12(d), however, the parties must "present" matters outside the pleadings to the court. FED. R. CIV. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56"). Here, Ms. Galouch has made no such presentation.

Even if the Court did consider the Plaintiff's characterization of these extraneous grievances and the attorney letter, there is still no allegation that Ms. Galouch engaged in protected activity under Title VII. For her grievances and attorney contact to constitute protected activity, they would have to relate to a practice made unlawful by Title VII. *See Fantini v. Salem State Coll.*, 557 F.3d 22, 31-32 (1st Cir. 2009) ("An employee has engaged in activity protected by Title VII if she has either (1) opposed any practice made an unlawful employment practice by Title VII or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII"). Yet the Complaint does not allege that she opposed any employment practice made unlawful by Title VII or participated in any matter in an investigation or proceeding under Title VII. Here there are no facts at all in the Complaint that link Ms. Galouch's actions to a matter

relating to "race, color, religion, sex, or national origin." Even viewed most favorably to Ms. Galouch, the Court cannot infer that the Department's adverse employment actions had anything to do with activity protected under Title VII.

This case is similar to *Ahanotu v. Mass. Tpk. Auth.*, 466 F. Supp. 2d 378 (D. Mass. 2006) in which an employee alleged that he suffered retaliation "as a result of reporting on mismanagement and fraud within the Big Dig project but not for any reported instances of discrimination." *Id.* at 395. Concluding that the retaliation claim "is more appropriately considered as being brought under the Massachusetts Whistleblower Statute," the district court dismissed the Title VII count. *Id.*

Finally, even assuming her grievances and attorney letter constituted "protected activity" under Title VII, the subject of the grievances and letter must relate to a Title VII concern. *See Morales-Vallellanes v. Potter*, 605 F.3d 27, 36 (1st Cir. 2010) (adverse employment action suffered by retaliation plaintiff must be "on account of a protected activity"). The grievances were directed to the Department's response to Ms. Galouch's court reporter complaints; the attorney letter only informs the State that Ms. Galouch was represented by counsel and requests her personnel file. There is nothing in these documents to suggest that Ms. Galouch was making a claim related to her race, color, religion, sex, or national origin. *Morales-Cruz v. Univ. of P.R.*, No. 11-1589, 2012 U.S. App. LEXIS 7158, at *13 (1st Cir. Apr. 10, 2010) ("To state a cause of action under this portion of the statute, the pleading must contain plausible allegations indicating that the plaintiff opposed a

practice prohibited by Title VII and suffered an adverse employment action as a result of that opposition").

In sum, accepting as true all the factual allegations in the complaint and construing all reasonable inferences in favor of the plaintiff, Ms. Galouch's Complaint does not contain "sufficient facts to show that [s]he has a plausible entitlement to relief." *Sanchez*, 590 F.3d at 41.

### B. Pendant State Claims

This leaves the MHRA and MWPA claims in Count Two. These are purely state law claims before this Court pursuant to its supplemental jurisdiction. *See* 28 U.S.C. § 1367. Where a district court has dismissed all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3). The First Circuit generally assumes that once all federal claims are resolved, the state claims should be dismissed. *See, e.g., Rojas-Velazquez v. Figueroa-Sancha*, No. 11-1447, 2012 U.S. App. LEXIS 6395, at *16-18 (1st Cir. Mar. 29, 2012) ("Because the only federal claims in this suit were properly dismissed . . . [the plaintiff's] pendent claims were also appropriately dismissed"); *Batterman v. Leahy*, 544 F.3d 370, 376 (1st Cir. 2008) ("if the federal claims were disposed of on the papers, the district court would likely decline to exercise pendent jurisdiction over the state-law claims").

## V. CONCLUSION

The Court GRANTS the Defendants' Motion to Dismiss (Docket # 4) as to Count One and DISMISSES without prejudice Count Two. Upon motion of the Plaintiff, the Court also DISMISSES without prejudice Count Three.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 13th day of April, 2012